1   Carla M. Wirtschafter (SBN 292142)
    Email:  cwirtschafter@reedsmith.com
2   REED SMITH LLP
    1901 Avenue of the Stars, Suite 700
3   Los Angeles, CA  90067-6078
    Telephone:   (310) 734-5200
4   Facsimile:   (310) 734-5299

5   Kirsten R. Rydstrom (*Pro hac vice* pending)
    Email: krydstrom@reedsmith.com
6   Richard A. Graham (*Pro hac vice* pending)
    Email: rgraham@reedsmith.com
7   Reed Smith Centre, 225 Fifth Ave
    Pittsburgh, PA 15222
8   Telephone: (412) 288-3131
    Facsimile: (412) 288-3063

9
    *Attorneys for Plaintiffs*
10  *Philips North America LLC and Koninklijke*
    *Philips N.V.*
11

**UNITED STATES DISTRICT COURT**

12

**CENTRAL DISTRICT OF CALIFORNIA**

13

**SOUTHERN DIVISION**

14

| | |
|---|---|
| PHILIPS NORTH AMERICA LLC, a Delaware Company, and KONINKLIJKE PHILIPS N.V., a Company of the Netherlands,<br><br>              Plaintiffs,<br><br>       vs.<br><br>KPI HEALTHCARE INC., a California Corporation; KPI HEALTHCARE ECOMMERCE, INC., a California Corporation; and DOES 1-10, inclusive,<br><br>              Defendants. | Case No.: 8:19-cv-01765<br><br>**COMPLAINT FOR:**<br><br>**(1) TRADEMARK INFRINGEMENT – 15 U.S.C. § 1125(a), 15 U.S.C.  1114;**<br><br>**(2) FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125(a);**<br><br>**(3) FALSE ADVERTISING – 15 U.S.C. § 1125(a);**<br><br>**(4) CIRCUMVENTING A TECHNOLOGICAL MEASURE – 17 U.S.C. § 1201;**<br><br>**(5) MODIFYING COPYRIGHT MANAGEMENT INFORMATION – 17 U.S.C. § 1202; AND**<br><br>**(6) TRADE SECRET MISAPPROPRIATION – 18 U.S.C. § 1836;**<br><br>**(7) VIOLATIONS OF CALIFORNIA'S UNIFORM TRADE SECRET ACT – CALIFORNIA CIVIL CODE § 3426,** |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-145776994

*ET. SEQ.*

**(8) VIOLATION OF CALIFORNIA PENAL CODE §§ 484(A) AND 496(A)**

**(9) UNFAIR COMPETITION – CAL. BUS. & PROF. C. § 17200**

**(10) DECEPTIVE TRADE PRACTICES – FALSE ADVERTISING – CAL. BUS. & PROF. C. § 17500**

**JURY TRIAL DEMANDED.**

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Plaintiffs Philips North America LLC ("Philips USA") and Koninklijke Philips N.V. ("Philips N.V.") (hereinafter, collectively the "Plaintiff" or "Philips"), allege as follows against Defendants KPI Healthcare Inc. and KPI Healthcare Ecommerce, Inc. which upon information and belief, also currently do and have done business under the fictitious names and/or names KPI Ultrasound, LLC, KPI Ultrasound, Inc., and/or KPI Healthcare Holdings, Inc. (collectively "Defendants" or "KPI"):

1.      Philips is a well-known leader in the business of developing, manufacturing, selling, supporting, maintaining, and servicing medical imaging systems used at hospitals and medical centers. Philips' systems include Philips' proprietary hardware and software, which are necessary to operate, service, and repair Philips' systems.  Philips' proprietary software enables certain functions on the ultrasound systems, which can only be modified by Philips, and the software enables Philips to control, update and track its ultrasound systems in the marketplace.  Philips' customers pay for enabled features and additional options.

2.      Philips' high quality products and proprietary software has made Philips a trusted producer, manufacturer, and supplier of medical imaging systems worldwide, and in the course of Philips' business, Philips has garnered substantial goodwill and has advertised and marketed worldwide the Philips' goods and services under the Philips trademarks.

3.      In a fraudulent and intentional scheme to trade off of Philips' reputation and goodwill, and to steal Philips' proprietary software to make a profit, KPI uses its international affiliates[1] to import Philips' ultrasound systems into the United States. Once in the United States, KPI illegally and without Philips' consent hacks into Philips' proprietary software to modify, tamper with and alter Philips' ultrasound systems to enable software features and to sell the modified Philips' ultrasound

[1] Philips has never granted KPI nor any KPI affiliate distribution rights in the United States, and KPI's foreign affiliates have never been permitted to share Philips' intellectual property with KPI.

systems with the unlicensed features for a profit.  KPI is not authorized to sell Philips' ultrasound systems or to tamper with the proprietary software to enable features without Philips' permission. These modifications create ultrasound systems in configurations Philips has never sold or supported.

4.     KPI's illegal conduct is not limited to tampering with Philips' proprietary software.  KPI also physically alters the ultrasound systems to hide from Philips, and the public, their illegal and unauthorized conduct.  Specifically, KPI modifies the serial numbers and other hardware identifiers on the ultrasound systems to obfuscate any trail of KPI's modifications.

5.     KPI then resells the altered ultrasound systems with the modified proprietary software at a discounted price to customers within the United States.

6.     In furtherance of their brazen scheme, KPI markets and advertises these illegally modified systems using Philips' name and trademarks to mislead the public into believing that the products and system configurations KPI is selling are backed by Philips' reputation for reliability and quality and that they contain the trusted Philips' stamp of approval.

7.     Philips brings this action against KPI to put a stop to KPI's illegal scheme. In addition to recovering damages caused by KPI's counterfeit products, Philips seeks a permanent injunction prohibiting KPI from using Philips' trademarks, goodwill, or proprietary material; from misappropriating Philips' intellectual property; and an order requiring an accounting and return of all Philips' proprietary material in KPI's possession, shared by KPI, or obtained by KPI through KPI's unlawful acts, including an identification of all persons or entities such information has been obtained from or shared with.

## THE PARTIES

8.     Plaintiff Philips North America LLC ("Philips USA") is a Delaware limited liability company, formerly known and doing business as Philips North America Corporation (a Delaware Corporation), with a principal place of business in

Andover, Massachusetts.   Philips USA's business includes, among other things, developing, manufacturing, selling, supporting, maintaining, and servicing Philips' medical imaging systems.

9.      Plaintiff Koninklijke Philips N.V. ("Philips NV") is a public limited liability company organized and existing under the laws of the Netherlands, with a principal place of business at High Tech Campus 5, Eindhoven Netherlands 5656 AE. Philips NV is the sole owner of numerous Philips' subsidiaries, including Plaintiff Philips North America LLC.

10.      Based upon publicly available information obtained from the California Secretary of State website and belief, Defendant KPI Healthcare Inc. is a corporation organized and existing under the laws of the State of California, with its principle place of business at 23865 Via Del Rio, Yorba Linda, CA 92887.

11.      Based upon publicly available information obtained from the California Secretary of State website and belief, Defendant KPI Healthcare Ecommerce, Inc. is a corporation organized and existing under the laws of the State of California, with its principle place of business at 23865 Via Del Rio, Yorba Linda, CA 92887.

12.      The true names or capacities, whether individual, corporate, associate, or otherwise, of Does 1-10 inclusive, and each of them are unknown to Plaintiffs at this time. Plaintiffs therefore sue Does 1-10 by such fictitious names. Plaintiffs will amend the Complaint to reflect the true names and capacities of said Does 1-10 when that information has been ascertained.  Plaintiffs allege upon information and belief that each of Does 1-10 is an agent, co-conspirator, employee and/or partner of Defendants and each other, and each was involved in and caused the wrongdoing alleged herein, and is jointly and severally liable for all of the conduct alleged herein.

## JURISDICTION AND VENUE

13.      This action is for federal trademark infringement, false designation of origin, and false advertising involving claims arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, for circumventing a technological measure that effectively

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

controls access to a protected work arising under the Digital Millennium Copyright Act ("DMCA") 17 U.S.C. §§ 1201, 1202 *et seq.*, for trade secret misappropriation under 18 U.S.C. § 1836 *et seq.*, and for violations of California's Uniform Trade Secret Act, California Civil Code § 3426, *et. Seq.*, California Penal Code §§ 484(a) and 496(a), and California Business and Professions Code §§ 17200 and 17500.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), 17 U.S.C. § 100 *et. seq.*, and 28 U.S.C. §1369 (supplemental jurisdiction) and the doctrines of ancillary and pendant jurisdiction.

15.     This Court has personal jurisdiction over KPI, because KPI has their principal place of business located in this district.  Moreover, KPI has transacted business in this district and committed infringement and tortious acts within the State of California by offering products and/or services using Philips' federally registered trademarks without permission and knowing that such use is likely to cause consumer confusion and harm to Philips in this district.  Upon information and belief, KPI's sales representatives target and/or solicit business from California residents.  Upon information and belief, KPI's business in this district includes tampering with Philips' proprietary software and physically altering serial numbers and other hardware identifiers on Philips' ultrasound systems, disassembling of Philips' medical device systems by circumvention of technological measures that control access to Philips' protected works and by use of misappropriated trade secrets belonging to Plaintiff.

16.     Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2), because Defendants reside in this district and the asserted claims arise from Defendants' conduct within this district, including the solicitation of business and the promotion of its products and/or services while making unauthorized and infringing use of Plaintiff's trademarks, copyrights, and trade secrets.

///

///

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

## BACKGROUND AND FACTS RELATED TO THIS ACTION

### ~Background Related to Philips~

17.    Philips is well-known in the healthcare industry as a trusted provider of electronic medical imaging devices for use in healthcare facilities by healthcare providers.

18.    Philips is among the premier medical imaging device companies in the United States and supplies healthcare providers throughout the United States with medical devices.  Philips provides a variety of high quality products that include, but are not limited to, imaging devices such as ultrasound systems, computed tomography (CT) scanners, positron emission tomography (PET) scanners, X-ray machines, magnetic resonance (MR) scanners, and nuclear medicine scanners.

19.    Philips develops, manufactures, sells, and subsequently supports, maintains, repairs and services these medical imaging systems through proprietary hardware, software, and trade secrets contained within the proprietary software and hardware.

20.    In addition to the specific products and services that Philips offers, the Philips name has also become commonly known as the provider of specific branded lines of medical imaging devices, including high-end and premium ultrasound imaging devices under the "CX," "HD," "ClearVue," "Sparq," "VISIQ," "Xperius," "Affiniti," and EPIQ product brand names. In addition to these brands, Philips sells refurbished models of these branded products as part of its Diamond Select program. New models and refurbished Diamond Select models of Philips branded ultrasound imaging devices are generally referred to herein as Philips' "Ultrasound Systems."

21.    In addition to Philips' Ultrasound Systems, Philips is also commonly known as a provider of specific branded lines of x-ray machines known as the "Integris," "FD Xpers," "Selaron," "Allura," and "FD Allura" models; of CT and/or PET scanners known as the "Brilliance," "Ingenuity," "IQon," "iCT," "Big Bore," and "MX16" models; of a series of magnetic resonance (MR) scanners known as the

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

"Ingenia" models; and of a series of nuclear medicine and/or other scanners known as the "BrightView" models.

22.   Philips' refurbished Ultrasound Systems are known to consumers and the public through Philips' Diamond Select brand program, and Philips has been selling refurbished Ultrasound Systems under the Diamond Select brand name since as early as 2004.

### ~Philips' Federally Registered Trademarks~

23.   Philips is the owner of the well-known PHILIPS brand name, which it uses on a wide variety of medical imaging products.

24.   For the past eighty years, Philips has continuously and exclusively used the PHILIPS trademarks as the source identifier for the medical devices and accompanying proprietary software they have sold in the U.S. The PHILIPS trademarks have also been continuously and exclusively used as the source identifier for the brands and Ultrasound Systems described in Paragraphs 20 and 21 above.

25.   In addition to the common law rights in the PHILIPS trademark, Philips N.V. owns and authorizes its wholly owned subsidiary Philips USA to use the federally registered trademarks bearing Registration No. 706,721 (registered on November 1, 1960), No. 3,864,315 (registered on October 10, 2010) and No. 5,038,342 (registered on September 13, 2016). These registered trademarks include the word mark PHILIPS, and the design mark bearing the Philips' crest with four-pointed stars (collectively, the "PHILIPS Trademarks"). Philips NV also owns a federally registered trademark for the Philips' brand EPIQ, Registration No. 5,121,494 (registered on January 17, 2017), which has been in continuous use by Philips since at least July 16, 2012. Philips NV also owns a federally registered trademark for the Philips' brand AFFINITI, Registration No. 4,590,914 (registered on August 26, 2014), which has an international priority claim to July 25, 2013. Philips NV also owns a federally registered trademark for the Philips' brand XPERIUS, Registration No. 5,326,508 (registered on November 7, 2017), which has an international priority claim

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

to October 26, 2016. Philips NV also owns a federally registered trademark for the Philips' brand SPARQ, Registration No. 4,611,675 (registered on December 30, 2014), which has a priority date of May 5, 2011. The aforementioned product marks shall be referred to collectively as the "PHILIPS PRODUCT Trademarks" and collectively with the PHILIPS Trademarks as the "TRADEMARKS."

26.     Philips USA directs all U.S.-based ultrasound operations on behalf of Philips N.V., including sales, brand marketing, product marketing, product design, public relations, distribution, enforcement, and licensing of and for PHILIPS-branded ultrasound products, including those bearing the TRADEMARKS.

27.     Philips has spent considerable time, effort, and money promoting their trademarks and developing customer recognition and goodwill in the same.  For at least 80 years, Philips has made continuous, substantial, and ongoing investments in the use, marketing and promoting of the PHILIPS Trademarks through a variety of media, including written materials, Internet advertising, social media, and presentations to customers and prospective customers at trade shows and conferences. Due to Philips' exclusive, extensive and continuous use of the PHILIPS Trademarks and the PHILIPS PRODUCT Trademarks, the public has come to recognize the TRADEMARKS as being uniquely associated with Philips.

**~Philips Owns Software Copyrights And Has Implemented Strict Access Controls In The Ultrasound Systems~**

28.     Philips' Ultrasound Systems are complex pieces of medical equipment that rely heavily on proprietary software and trade secrets that accompany each system.  That software was developed by and is owned by Philips.

29.     The specific versions and functionalities of the Ultrasound Systems enabled on a particular system can vary, and Philips licenses the use of features on each specific system. Because the proprietary software enabled on the Ultrasound Systems allows them to function, the proprietary software includes strict access controls to limit access to software features.  These access controls also control access

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

to optional software which enables certain system features and which Philips licenses to end users for a fee.

30.    The Ultrasound Systems that Philips currently sells or that are active in the field are driven by one of two software platforms: (1) Philips Voyager Platform and (2) Philips Common Platform software.  Each of these platforms was created by, and is owned by, Philips and includes Philips' confidential and proprietary information, intellectual property and trade secrets.

31.    Each Ultrasound System, whether driven by Voyager Platform software or Common Platform software, includes both model specific features and machine specific set features that Philips enables on each Ultrasound System pursuant to the license that the end user purchases.  An Ultrasound System may also support optional hardware add-ons and features, which Philips can enable if the end user purchases an additional license.

32.    Philips uses multiple layers of technological controls to protect Philips' copyright-protected works from unauthorized access.  These controls include user specific access codes and hardware-keys, which enable the software access and control features for a particular registered user. These user specific access controls permit access to enabled Philips tools and features based on a user's registered access authorization level.  These controls also include machine specific access controls which permit users access only to the features and tools that have been enabled on a specific device. Philips further protects its trade secrets and proprietary software with both contractual restrictions and access controls which only allow individuals access to informational material consistent with the authorization level of their user credentials.

33.    Each specific Ultrasound System includes certain software and hardware features that may only be used when a particular licensable feature is enabled.  For each Philips' Ultrasound System sold, only the licensed features and tools are enabled, and only the specific authorized users of the machine can access the enabled features

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

and software options.

34.     Philips' optional licensable features control access to Philips' proprietary software and limit the options available on each specific Ultrasound System.  Features and add-ons that have not been licensed are not accessible on the Ultrasound System or by the authorized user. Any attempt to use an unlicensed feature on an Ultrasound System will result in an error message that the feature is not compatible with the system and/or the machine specific access controls will prevent access to the unlicensed feature.

35.     The systems also contains other software features, including trade secret features, which can only be accessed by individuals with the necessary authorization levels. These features include certain proprietary onboard service, calibration, and diagnostic features and tools.

36.     Philips has spent considerable time and money creating this software and developing access controls to limit and control access to these features in the manners described above. Philips meticulously controls who holds a license for specific restricted tools and features, and requires end users to register for authorized access.

37.     Unauthorized access to or changes to a Philips Ultrasound Machine or its software puts Philips' proprietary software and trade secret information at serious risk, and harms Philips' ability to control access to its proprietary software, and use of its Ultrasound Systems.

**~KPI Is Modifying Philips' Ultrasound Systems and Selling Them For A Profit~**

38.     Upon information and belief, Philips alleges that each KPI Defendant (and the fictitious names under which they operate) is a member of KPI Healthcare, Inc.'s global network of businesses and KPI's website advertises KPI Healthcare, Inc. as the "World Headquarters."  KPI's global network includes non-U.S. based companies, including KPI Europe and KPI Philippines.  KPI's public presence and website present KPI as a single, unified, international operation that is "expanding globally" from its headquarters in Yorba Linda, California.

39.     While certain KPI foreign affiliates are or have been licensed distributors of Philips Ultrasound Systems outside of the U.S., they are not authorized to sell, import into, or distribute Ultrasound Systems in the United States.  No KPI entities have distribution rights for any Philips systems within the United States.

40.     Philips has recently discovered that KPI and/or KPI's foreign counterparts through KPI are knowingly and intentionally selling modified Ultrasound Systems in the U.S.  Philips has not authorized the sale nor the modification of the Ultrasound Systems.  KPI's unauthorized sale of modified Ultrasound Systems provides customers unauthorized access to proprietary Philips' software and trade secret information.  Upon information and belief, Philips alleges that KPI is profiting from this illegal scheme.

41.     Upon information and belief, Philips alleges that in order to modify Philips Ultrasound Systems, KPI hacks into those systems by circumventing the access controls described above, in order to gain access to and modify Philips' software. The modifications to Philips' software include circumventing additional access controls within Philips' systems in order to permanently enable optional software tools and features that consumers could only otherwise access by purchasing licenses from Philips or to permanently enable combinations of optional features that consumers could never obtain from Philips, because Philips does not sell or support such combinations.  KPI's scheme involves intentionally modifying Philips Ultrasound Systems into a configuration never sold or supported by Philips.

42.     KPI's modifications are not limited to the software on the Ultrasound Systems.  Upon information and belief Philips alleges that KPI is also altering device serial numbers on the software and physically modifying serial number plates affixed to Philips devices, including non-OEM configurations of software and hardware, tampering with internal serial number and chip identification numbers, and mislabeling Philips devices.

43.     KPI is not authorized to distribute these modified Philips Ultrasound

Systems, and KPI does not and never has held a license to make modifications to Philips Ultrasound Systems or the software that drives them.

44.    KPI is not only making unauthorized changes to the Ultrasound Systems, KPI is knowingly and intentionally selling the resulting counterfeit systems for substantially more than such systems were purchased by KPI.  In short, KPI is making a profit at the expense of Philips by offering consumers counterfeit systems with unlicensed features that consumers would otherwise have to purchase separately from Philips, and/or with configurations that consumers could never obtain from Philips. KPI then sells the counterfeit ultrasound systems for less than Philips would charge for a comparably licensed model.   KPI is therefore making these unauthorized changes for commercial gain.

45.    Upon information and belief, Philips alleges that consumers who purchase KPI's counterfeit systems believe that Philips is the source of these systems, and that they are purchasing services from Philips to support and maintain these systems.

46.    On May 18, 2018, Philips informed KPI that Philips believes KPI unlawfully was and continues accessing and using Philips software and trade secrets as part of its international scheme of capitalizing on Philips goodwill by reselling the counterfeit ultrasound systems based on modifications made to actual Philips Ultrasound Systems.  Over the ensuing months, Philips and KPI exchanged letters, but KPI remains steadfast in their unlawful scheme, leaving Philips with no alternative but to litigate to protect their rights.

**~ KPI Is Using Philips' Well Known Name and the PHILIPS Trademarks and PHILIPS PRODUCT Trademarks to Sell the Modified Ultrasound Systems ~**

47.    As indicated above, KPI's conduct is not limited to making counterfeit systems by tampering with and modifying Philips Ultrasound Systems.  KPI also sells its counterfeit systems by falsely advertising to the public that KPI and the systems they are selling are affiliated with Philips.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

48.     Upon information and belief, Philips alleges that after making these unauthorized modifications, KPI markets and distributes these machines, encased in a Philips Ultrasound System body and bearing the TRADEMARKS, to purchasers in the United States and elsewhere.

49.     In furtherance of these false advertisements, and in order to create the appearance that KPI's behavior is authorized by Philips, KPI is also using the TRADEMARKS to market and advertise the counterfeit systems without authorization.

50.     KPI is not licensed to use of any TRADEMARKS.

51.     For example, KPI's website, at https://www.kpihealthcare.com/philips-diamond-select/, makes prominent use of Philips logo and substantial reference to Philips Diamond Select program in order to sell KPI's modified ultrasound systems:



52.     KPI is not a member of Philips Diamond Select program.

53.     KPI also falsely represents that the counterfeit systems KPI is selling are "[r]emanufactured by Philips." They are not.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

54.     KPI further falsely provides the below manufacturer commitment from Philips to KPI's customers, available at the same website as above:

**Commitment** from the **Manufacturer**

Differentiating yourself with a premium system that is full of advanced features is a good solution to maintain profitability of your business. With Philips Diamond Select, re-manufactured by Philips, at a very affordable price(20% typical savings compared to the price of a new piece of equipment), you can offer advanced service to your patient while maintaining your cost low. Philips Diamond Select with assured quality by Philips itself is a perfect solution for your ROI.

55.     Moreover, although KPI's modifications are made without Philips' consent, in order to trade off of the Philips brand and Philips' reputation for excellence, KPI is advertising to the public that the modified Ultrasound Systems are "re-manufactured by Philips" and "assured with quality by Philips". These statements are materially false, and lead consumers to believe that KPI's counterfeit products are backed by the Philips' name, reputation and brand.

56.     KPI's website, at https://www.kpihealthcare.com/blog/philips-diamond-select-ultrasound-machines/, also falsely describes Philips Diamond Select program as originating jointly from KPI and Philips, and states that the modified Ultrasound Machines are being offered jointly by KPI and Philips:



57.     On the same webpage, KPI falsely advertises: "*KPI Healthcare now hosts the Philips Diamond Select program, which provides top-tier, industry-*

- 15 -
COMPLAINT

*dominant, remanufactured ultrasound systems at a fraction of the original price ... That is why KPI Healthcare offers Philips Diamond Select ultrasound machines to worldwide medical institutions and local healthcare practitioners at an affordable price.*"

58.   KPI is not the "host" of Philips Diamond Select program.

59.   Without authorization, the KPI website also falsely advertises the sales of specific Philips' Ultrasound System models including the following text: "*Contents created by Product Management Team and Marketing Team of KPI Healthcare. Utilization granted from product manufacturer via released brochures, product catalogs, data sheets, etc. KPI has the rights for all contents included on this site and solely owned by KPI Healthcare, and supported by market research completed by their Marketing Team.*" See https://www.kpihealthcare.com/medical-equipment/ultrasound-machines/philips-ultrasound/philips-affiniti-30/.

60.   On both pages of the KPI website identified above, KPI advertises its sale of modified Philips Ultrasound Systems using a video marked with KPI logos.

61.   The video displayed is a video that Philips owns and that Philips created (the people shown in the video are Philips' employees) to market the Philips' Diamond Select program.  KPI is using the video without authorization, and has superimposed its logo into the video to falsely advertise to the public that the modified machines KPI is selling are backed by Philips' reputation for excellence.

62.   Exemplar images taken of the video include:

///

///

///

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

COMPLAINT



*Above: Before pressing play button, this image is displayed on KPI's website.*



*Above: Upon pressing play, the KPI Healthcare logo is displayed.*



*Above: KPI's modified Philips video states, "we build it all up again ..." also*

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**COMPLAINT**

*showing text juxtaposed by KPI on its website https://www.kpihealthcare.com/philips-diamond-select/*

63.   KPI is not licensed or authorized to install software or updates or in anyway modify Philips Diamond Select Ultrasound Systems.   Philips has never licensed KPI any right to use this video, nor has Philips authorized KPI's modification of this video to include the KPI introduction or the KPI mark in the bottom corner of the video.   Philips version of this video can be found at https://www.usa.philips.com/healthcare/solutions/refurbished-systems/refurbished-systems-ultrasound, and an unmodified image from a Philips' copy is shown below:



64.   KPI has also made unlicensed use of other Philips copyright protected material in furtherance of KPI's false advertising scheme. For example, KPI markets and promotes its counterfeit ultrasound machines using the following digital brochure:

///

///

///

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



65.    This brochure belongs to Philips, and is being used by KPI without authorization to purportedly market a Philips Affiniti ultrasound system which KPI is not authorized to sell. Upon information and belief, Philips alleges that the system advertised is a counterfeit system.

66. The actual Philips brochure is shown here:





REED SMITH LLP

A limited liability partnership formed in the State of Delaware

67.     Upon information and belief, Philips alleges that KPI's website and other marketing activities intentionally target U.S. customers, in order to sell the modified and counterfeit Philips Ultrasound Systems to KPI's U.S. customers.

68.     Upon information and belief, Philips alleges that KPI's customer service representatives also lead inquiring customers to believe that they are talking to a Philips' employee when such customers call the help desk numbers KPI provides with the sold machines.

69.     And upon information and belief, Philips alleges KPI furthers its scheme of marketing KPI's counterfeit goods through false advertising by unlawfully distributing copies of Philips' restricted confidential and trade secret software and material to KPI's customers, material which Philips restricts even from Philips own engineers, and which upon information and belief KPI has obtained by unlawful means including.

## FIRST CAUSE OF ACTION

## Trademark Infringement – 15 U.S.C. §§ 1125(a), 1114

### (All Plaintiffs Against All Defendants)

70.     Philips restates and realleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this First Cause of Action.

71.     As set forth above, since at least 1960, Philips N.V. has owned valid and protectable interests in the PHILIPS Trademarks. Philips USA is authorized to advertise and use the PHILIPS Trademarks as the source identifier for Philips' goods and services in the United States, including the Ultrasound Systems and accompanying proprietary software described herein.  Philips have been continuously and exclusively using the PHILIPS Trademarks as the source identifier for its goods and services for at least the past 80 years.

72.     As set forth above, since at least as early as July 2012, Philips N.V. has owned valid and protectable interests in the PHILIPS PRODUCT Trademarks. Philips USA is authorized to advertise and use the PHILIPS PRODUCT Trademarks as the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

source identifier for Philips' goods and services in the United States, including the Ultrasound Systems and accompanying proprietary software described herein. Philips have been continuously and exclusively using the PHILIPS PRODUCT Trademarks as the source identifier for its goods and services for at least the past 7 years.

73.     KPI does not own any of the TRADEMARKS and is not, and never has been, authorized to use the TRADEMARKS.

74.     Nevertheless, Defendants are using the TRADEMARKS without authorization in connection with their unlawful scheme to import, modify, and sell KPI's counterfeit ultrasound machines, which appear to be, but are not, Philips Ultrasound Systems.   When KPI sells these modified systems they bear the TRADEMARKS.  KPI intentionally does this in direct competition with Philips and for commercial gain.

75.     KPI's unauthorized use of the TRADEMARKS on these counterfeit machines, and with its advertising using the TRADEMARKS and name, are part of KPI's fraudulent scheme to promote and advertise these machines under the guise of being a "host" of Philips Diamond Select program.  KPI uses the TRADEMARKS to confuse customers into believing that KPI is a "host" of Philips Diamond Select program and the altered counterfeit machines that KPI is selling have been remanufactured, checked, and are backed by the Philips' name, brand, and commitment.

76.     KPI is also using the TRADEMARKS to confuse consumers into believing that the systems they are offering are the same or similar to products offered by Philips, and KPI is offering their modified counterfeit products at a lower price than comparable Philips products in order to out price Philips.

77.     Defendants also make unauthorized use of the TRADEMARKS in their advertisements to sell the modified and counterfeit systems in the healthcare industry (the same industry in which Philips markets and sells the Ultrasound Systems).

78.     Upon information and belief, Philips alleges that customers who purchase

KPI's counterfeit machines believe that they are purchasing a Philips' approved Ultrasound System and accompanying software.

79.   Defendants' unauthorized and tortious conduct is likely to cause, has already caused, and is now causing confusion, mistake, and deception among consumers and therefore constitutes an infringement of Philips' registered TRADEMARKS pursuant to Section 32 of the Lanham Act, 15 U.S.C. § 1114.

80.   Defendants' unauthorized and tortious conduct also has deprived, and will continue to deprive, Philips of the ability to control consumer perception of their services marketed under the TRADEMARKS, including access to the Philips' proprietary software and the trade secrets contained therein, placing the valuable reputation and goodwill of Philips in the hands of KPI, over which Philips has no control.   KPI's unlawful conduct puts Philips at a competitive disadvantage and unfairly and illegally trades off of Philips' goodwill.

81.   Defendants' knowledge of the TRADEMARKS, and their ongoing marketing and sale of modified Philips Ultrasound systems using the TRADEMARKS evidences an intent to cause consumer confusion and defraud consumers, rendering this case exceptional under 15 U.S.C. § 1117.

82.   As a direct and proximate result of Defendants' infringement under 15 U.S.C. § 1114, Plaintiffs have suffered, and will continue to suffer, substantial damage and irreparable harm constituting injury for which they have no adequate remedy at law.   Unless restrained and enjoined by this Court, the wrongful acts of KPI will continue to cause serious irreparable injury and damage to Philips and the goodwill associated with Philips' TRADEMARKS.

## SECOND CAUSE OF ACTION

## False Designation of Origin – 15 U.S.C. § 1125(a)

### (All Plaintiffs Against All Defendants)

83.   Philips restates and realleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Second Cause of Action.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

84.     As set forth above, Philips has owned valid and protectable interests in the PHILIPS Trademarks since at least 1960 and KPI has never been authorized to use the PHILIPS Trademarks.

85.     As set forth above, Philips has owned valid and protectable interests in the PHILIPS PRODUCT Trademarks since as early as 2012 and KPI has never been authorized to use the PHILIPS PRODUCT Trademarks.

86.     Philips has continuously used and therefore owned protectable interests in the Diamond Select brand name since at least 2004 and KPI has never been authorized to use the Diamond Select brand.

87.     Defendants have been using and continue to use the TRADEMARKS to convince consumers and the public that the counterfeit Ultrasound Machines KPI is selling are Philips' backed and verified Ultrasound Machines.

88.     Defendants have been using and continue to use the Diamond Select mark to convince consumers and the public that the counterfeit Ultrasound Machines KPI is selling are Philips' backed and verified Ultrasound Machines sold as part of, in connection, in affiliation with, or with the approval of Philips' Diamond Select business.

89.     In order to deceive the public into believing that KPI is selling a Philips' authorized Ultrasound Machine, KPI's counterfeit machines bear the PHILIPS Trademarks and/or one or more of the PHILIPS PRODUCT Trademarks.  Defendants' use of the TRADEMARKS on or in connection with these machines and in juxtaposition with KPI's name create a false association between KPI and Philips. KPI's illegal conduct is directed towards the same consumers and through the same channels of trade that Philips uses.

90.     KPI also uses the TRADEMARKS in its advertising, including on its website as set forth above, and misappropriates Philips' created advertising brochures and videos to market KPI's counterfeit systems. KPI falsely tells consumers that the Ultrasound Machines they are selling are part of the Philips Diamond Select Program

and that they have been checked and refurbished by Philips and are backed by Philips name and reputation.  KPI's advertising falsely touts a partnership and affiliation with Philips that does not exist.

91.     Defendants' unauthorized and tortious conduct is likely to cause, has caused, and is now causing confusion, mistake, and deception in the public mind that: (i) the counterfeit systems sold by KPI are sponsored, approved, or endorsed by Philips, and (ii) there is a relationship, association, or partnership between KPI and Philips that does not, in fact, exist.

92.     Such conduct by Defendant constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

93.     Defendants' unauthorized and tortious conduct also has deprived, and will continue to deprive, Philips of the ability to control consumer perception of their products and services marketed under the TRADEMARKS, placing the valuable reputation and goodwill of Philips in the hands of KPI, over which Philips has no control, and misleading the public.

94.     Defendants' knowledge of the TRADEMARKS prior to KPI's adoption and use of the TRADEMARKS, and its ongoing marketing and sale of modified Philips Ultrasound systems using the TRADEMARKS, evidences an intent to cause consumer confusion and to defraud the public, and renders this case exceptional under 15 U.S.C. § 1117.

95.     As a direct and proximate result of Defendants' infringement under 15 U.S.C. § 1125(a), Plaintiffs have suffered, and will continue to suffer, substantial damage and irreparable harm constituting injury for which they have no adequate remedy at law.  Unless restrained and enjoined by this Court, the wrongful acts of KPI will continue to cause serious irreparable injury and damage to Philips and the goodwill associated with Philips' TRADEMARKS.

///

**THIRD CAUSE OF ACTION**

**False Advertising – 15 U.S.C. § 1125(a)**

**(All Plaintiffs Against All Defendants)**

96.     Philips restates and realleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Third Cause of Action.

97.     As set forth above, Philips has owned valid and protectable interests in the PHILIPS Trademarks since at least 1960 and KPI has never been authorized to use the PHILIPS Trademarks.

98.     As set forth above, Philips has owned valid and protectable interests in the PHILIPS PRODUCT Trademarks since as early as 2012 and KPI has never been authorized to use the PHILIPS PRODUCT Trademarks.

99.     As set forth above, Philips has continuously used and therefore owned protectable interests in the Diamond Select brand name since at least 2004 and KPI has never been authorized to use the Diamond Select brand.

100.   Defendants have been using and continue to use the TRADEMARKS to convince consumers and the public that the counterfeit Ultrasound Machines KPI is selling are Philips' backed and verified Ultrasound Machines.

101.   Defendants have also been using and continue to use the Diamond Select mark to convince consumers and the public that the counterfeit Ultrasound Machines KPI is selling are Philips' backed and verified Ultrasound Machines sold as part of, in connection, in affiliation with, or with the approval of Philips' Diamond Select business.

102.   In order to deceive the public into believing that KPI is selling a Philips' authorized Ultrasound Machine, KPI's counterfeit machines bear the PHILIPS Trademarks and/or one or more PHILIPS PRODUCT Trademarks.  Defendants' use of the TRADEMARKS on or in connection with these machines and in juxtaposition with KPI's name create a false association between KPI and Philips.  KPI's illegal conduct is directed towards the same consumers and through the same channels of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

trade that Philips uses.

103.   KPI also uses the TRADEMARKS in its advertising, including on its website as set forth above, and misappropriates Philips' created advertising brochures and videos to market KPI's counterfeit systems. KPI falsely tells consumers that the Ultrasound Machines they are selling are part of the Philips Diamond Select Program and that they have been checked and refurbished by Philips and are backed by Philips name and reputation.  KPI's advertising falsely touts a partnership and affiliation with Philips that does not exist.

104. Defendants' false and misleading representations of fact in its commercial advertising misrepresent the nature, characteristics, qualities, and origin of Defendants' ultrasound systems, and falsely represent that KPI's counterfeit ultrasound systems are sponsored, approved, or endorsed by Plaintiffs, that KPI's counterfeit goods originate from Philips, and that there is a relationship between KPI and Philips that does not, in fact, exist.

105.   Such conduct by KPI constitutes false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

106.   Defendants' unauthorized and tortious conduct also has deprived, and will continue to deprive, Philips of the ability to control consumer perception of their goods and services marketed under the TRADEMARKS, placing the valuable reputation and goodwill of Philips in the hands of KPI, over which Philips has no control.

107.   Defendants' knowledge of the TRADEMARKS prior to KPI's adoption and use of the TRADEMARKS, and their ongoing marketing and sale of modified Philips Ultrasound systems using the TRADEMARKS, evidences an intent to cause consumer confusion and to defraud the public, and renders this case exceptional under 15 U.S.C. § 1117.

108.   As a direct and proximate result of Defendants' infringement under 15 U.S.C. § 1125(a), Plaintiffs have suffered, and will continue to suffer, substantial

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

damage and irreparable harm constituting injury for which they have no adequate remedy at law.  Unless restrained and enjoined by this Court, the wrongful acts of KPI will continue to cause serious irreparable injury and damage to Philips and the goodwill associated with Philips' TRADEMARKS.

## FOURTH CAUSE OF ACTION

### Circumventing a Technological Measure – 17 U.S.C. § 1201

### (All Plaintiffs Against All Defendants)

109.   Philips restates and realleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Fourth Cause of Action.

110.   Philips medical imaging systems include Philips' copyrighted and proprietary software, which includes Philips' trade secrets.

111.   The clinical software and diagnostic and service tools software in Philips' Ultrasound Systems are protected by copyright under Title 17, and include without limitation Philips service tools for updating or modifying the licensed options available on a machine, and for modifying identification numbers associated with a machine.

112.   Philips Ultrasound System licensed optional software is also protected by copyright under Title 17.

113.   Philips employs numerous access controls in order to protect and control access to and restrict use of its copyrighted proprietary software and/or portions thereof.

114.   Philips' access controls include technological measures to protect and control access to and limit use of their copyrighted proprietary software and/or portions thereof.

115.   KPI has and continues to intentionally hack one or more of Philips' technological measures to circumvent these access controls to gain unauthorized access to Philips' protected software works, which include Philips trade secrets, and to enable features of these software works which Philips have not licensed or authorized.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Through these unlawful means, KPI unlawfully gains access to unlicensed Philips software and provides unfettered access to all subsequent users of KPI's counterfeit machines.

116.    KPI's counterfeit ultrasound systems are created by modifying Philips' access controls in order to provide KPI's customers with unrestricted and constant access to Philips' proprietary software without authorization or an appropriate license. Thus, KPI's business of selling modified ultrasound systems, each of which include modified machine specific access controls is manufacturing, offering to the public, and/or trafficking in a product, device, component, or part thereof, that is primarily designed or produced for the purpose of circumventing Philips' access controls that protect Philips proprietary software and trade secrets.

117.    KPI has intentionally and/or knowingly illegally hacked Philips' systems to circumvent the technological measures Philips uses to effectively control access to a work or works protected under Title 17, in violation of 17 U.S.C. § 1201(a)(1) of the Digital Millennium Copyright Act.

118.    KPI's counterfeit ultrasound systems are systems that provide KPI's customers with constant access to Philips' proprietary software. Thus, KPI's systems are, or at least include, devices, products, components, or parts thereof that are primarily designed or produced for the purpose of circumventing Philips' access controls that protect Philips software. Thus, KPI's business of creating and selling counterfeit systems, is knowingly marketing, manufacturing, offering to the public, and/or trafficking in a product, device, component, or part thereof, that is primarily designed or produced for the purpose of circumventing Philips' access controls that protect Philips software.

119.    Upon information and belief, Philips alleges that in order to carry out KPI's unlawful circumvention of Philips' access controls, KPI makes use of tools which have no use but to circumvent access controls.

120.    KPI has intentionally and/or knowingly manufactured, offered to the

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

public, or otherwise trafficked in technologies, products, services, devices, components, or parts thereof, that are primarily designed or produced for the purpose of circumventing protection afforded by Philips' access controls and/or which have limited commercially significant purpose other than to circumvent Philips' access controls in violation of the DMCA, 17 U.S.C. § 1201(a)(2).

121. Philips has been and will continue to be damaged in an amount not presently known with certainty, but that will be proven at trial.

122. Philips is entitled to the range of relief provided by 17 U.S.C. 1203, including but not limited to, injunctive relief, compensatory damages or statutory damages, punitive damages, and Philips' costs and attorneys' fees in amounts to be proven at trial. KPI's conduct has also caused irreparable and incalculable harm and injuries to Philips, and, unless enjoined, will cause further irreparable and incalculable injury, for which Philips has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

## Modifying Copyright Management Information – 17 U.S.C. § 1202

### (All Plaintiffs Against All Defendants)

123. Philips restates and realleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Fifth Cause of Action.

124. Philips proprietary software is protected by copyright laws, and Philips owns the copyright in its protected software.

125. Philips' proprietary software includes access controls that are accessed and read by Philips' automated copyright license management software within Philips Ultrasound Systems, which is a standard component of Philips' proprietary software included in each Philips Ultrasound System.

126. Philips authorizes specific machines to execute only specific licensed optional software, and the specific software is only available on that specific machine consistent with the features the customer purchases for that specific machine.

127. When a Philips Ultrasound System boots up, a Philips access control

allows the system to load only the licensed optional software based on machine specific configurations accessed by Philips access controls.  This automated system allows Philips to exclude unlicensed use of optional software and thus automatically enforces the terms and conditions under which Philips makes its software available on a Philips Ultrasound System.

128.  Philips' machine specific configuration files for controlling access only to licensed optional software include copyright management information under 17 U.S.C. 1202(c).

129.  KPI's business of modifying Philips Ultrasound Systems includes modifications to such copyright management information and is intended to allow users to make unauthorized access to unlicensed portions of Philips' protected software.

130.  Upon information and belief, Philips alleges KPI's customers are unaware that KPI has modified Philips' copyright management information, because KPI intentionally conceals this behavior from its customers.

131.  Upon information and belief, Philips alleges that KPI's sale of counterfeit ultrasound systems includes providing or distributing modified machine specific configurations.

132.  KPI's business of selling counterfeit ultrasound systems with modified copyright management information is done intentionally and for the purpose of distributing falsified copyright management information knowing that the copyright management information has been altered.  And KPI knows, has reasonable grounds to know, or intends that its behavior facilitates, enables, or induces KPI's customers to infringe Philips rights under Title 17.

133.  Philips has not authorized KPI to modify or provide such falsified copyright management information, nor has Philips authorized the modification of any copyright management information or the unlicensed use of Philips' proprietary optional software.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

134.  KPI knowingly and with the intent to induce, enable, facilitate, or conceal infringement by its customers provides, and has provided, falsified copyright management information and/or distributing falsified copyright management information in violation of 17 U.S.C. § 1202(a).

135.  KPI's intentional alteration of Philips' copyright management information and subsequent distribution of modified ultrasound systems that include Philips' proprietary software conveyed with such a modified copyright management information is done with the knowledge that such behavior induces, enables, facilitates, or conceals infringement of Philips copyright in its proprietary software in violation of 17 U.S.C. § 1202(b).

136.  KPI has also modified Philips' proprietary marketing video in order to conceal its use of a Philips' marketing material to market the counterfeit ultrasound systems and in furtherance of KPI's scheme to create consumer confusion as set forth above in the First, Second, and Third Causes of Action.

137.  Specifically, KPI has placed its name on and within Philips copyright protected marketing video as illustrated in the figures below.



*Above: KPI's name is superimposed on Philips copyright protected work.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware



*Above: KPI's name is embedded in an altered copy of Philips copyright protected work*

138.   KPI has similarly modified other Philips copyright protected marketing literature including removing Philips name, copyright information, and logo, and replacing it with KPI.

139.   KPI's name conveyed in connection with Philips' video work is false copyright information pursuant Section 1202 of the DMCA.

140.   KPI's modification of Philips' marketing video to include KPI's name throughout the video is conveyed in connection with Philips' marketing video is information conveyed with the video work that falsely suggests KPI is the owner or author of the work.

141.   KPI has knowingly and with the intent to facilitate or conceal its infringement of Philips' copyright in Philips' video work provided and distributed false copyright management information in violation of the DMCA, 17 U.S.C. § 1202(a).

142.   Philips has been and will continue to be damaged in an amount not presently known with certainty, but that will be proven at trial.

143.   Philips is entitled to the range of relief provided by 17 U.S.C. 1203, including but not limited to, injunctive relief, compensatory damages or statutory damages, punitive damages, and Philips' costs and attorneys' fees in amounts to be

proven at trial.  KPI's conduct has also caused irreparable and incalculable harm and injuries to Philips, and, unless enjoined, will cause further irreparable and incalculable injury, for which Philips has no adequate remedy at law.

## SIXTH CAUSE OF ACTION

### Trade Secret Misappropriation – 18 U.S.C. § 1836 *et seq.*

### (All Plaintiffs Against All Defendants)

144.   Philips restates and realleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Sixth Cause of Action.

145.   Philips owns and possesses certain confidential, proprietary, and trade secret information, including scientific, technical, and engineering information and financial, business, and economic information, as alleged above and below, in Philips' proprietary software for the Philips Ultrasound Systems.

146.   Philips' confidential, proprietary, and trade secret information relates to products used in, or intended for use in, interstate or foreign commerce.

147.   Philips' proprietary software and access control systems, including its diagnostic and service software, contain and are trade secrets because Philips restricts access to them and Philips has engaged in reasonable measures to maintain their secrecy.  Such reasonable measures to protect its trade secrets include, for example, implementing systems of access registration, access credential management, access control measures, temporal limitations on distributed electronic material and access credentials, and other safeguards associated with Philips' proprietary software, including in the form of physical and/or technological safeguards and also including in the form of contractual protections and written notices and warnings.

148.   Philips has expended significant money and effort in developing Philips' proprietary software, the trade secrets embodied therein, and the access control systems that protect such software and trade secrets, and that software and the information therein would be difficult to properly acquire or duplicate by KPI or other competitors of Philips.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

149.   Philips' proprietary software and access control systems derive independent economic value to Philips by not being generally known, and not being readily ascertainable through proper means, by another person who could obtain economic value from the disclosure or use of the information.  Moreover, they are of significant commercial value to Philips, because among other things, Philips relies upon these trade secrets to achieve an advantage in the marketplace with respect to the quality, range, and efficiency of the repair and maintenance services that it is able to offer by virtue of the pricing related thereto.

150.   Upon information and belief, Philips alleges KPI has distributed Philips proprietary software images, comprising Philips trade secrets, to third parties— software images which Philips only makes available to select Philips users, and restricts as to even certain of Philips' own engineers.

151.   Upon information and belief, Philips alleges KPI possesses and is making use of Philips' trade secret tools for managing its access controls.

152.   Philips' optionally enabled software, which implements and enables licensable features and tools, comprises Philips trade secrets, which Philips only authorizes execution of within specific licensed machines. These trade secrets reside on Philips Ultrasound Systems in compiled machine readable encoding, in a form which protects the nature and character and specific details of Philips trade secrets. These trade secrets are only accessible by a machine having an appropriate licensed option enabled by Philips' access controls. During execution a user or observer is unable to observe the nature, character, or details of the trade secrets embodied in the software that enables the machines functionality.

153.   KPI unlawfully accesses and enables access to Philips' trade secrets for the purpose of selling KPI's counterfeit machines for a profit. Upon information and belief, KPI acquired access to such Philips' trade secrets by improper means.

154.   Philips takes reasonable steps to protect its software images, each of which represents a substantial investment in time and money to develop by Philips,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

and to protect Philips' access control management tools.  These tools and software are protected by both technological and contractual confidentiality obligations of those who are granted access to such material.   Such trade secret material provides independent economic value by not being generally known because they allow Philips to manufacture software based electromechanical medical systems and to secure those systems and the intellectual property they contain.

155.   KPI has misappropriated some or all of these trade secrets for its own unlawful use and/or benefit without express or implied consent by Philips.   At the time of its use of such trade secrets, KPI knew or had reason to know that its knowledge of the trade secrets was acquired either under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit their use, or from or through a person who owed a duty to Philips to maintain the secrecy of the trade secret or limit the use of the trade secret, or by improper means.

156.   KPI's actions have been knowing, deliberate, willful, reckless, and in utter disregard of Philips' rights.

157.   As a result of KPI's misappropriation of these trade secrets, Philips has suffered actual damages in an amount to be proven at trial. At a minimum, KPI has gained an improper competitive advantage over Philips that caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

158.   KPI's ongoing and continuing use of the trade secrets and proprietary and confidential information of Philips has caused, and will cause, Philips repeated and irreparable injury.  Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by KPI.

159.   Philips has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorneys' fees.

160.   By engaging in the conduct set forth in the preceding paragraphs of this Complaint, KPI have violated the Defend Trade Secrets Act (DTSA), 18 U.S.C. §

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1836, *et seq.*

## SEVENTH CAUSE OF ACTION

## Trade Secret Misappropriation and Violations of California's Uniform Trade Secret Act – California Civil Code § 3426, *et. seq.*

### (All Plaintiffs Against All Defendants)

161.   Philips restates and realleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Seventh Cause of Action.

162.   Philips owns and possesses certain confidential, proprietary, and trade secret information, including scientific, technical, and engineering information and financial, business, and economic information, as alleged above and below, in Philips' proprietary software for the Philips Ultrasound Systems.

163.   Philips' confidential, proprietary, and trade secret information relates to products used in, or intended for use, in interstate or foreign commerce.

164.   Philips' proprietary software and access control systems, including its diagnostic and service software, contain and are trade secrets because Philips restricts access to them and Philips has engaged in reasonable measures to maintain their secrecy.   Such reasonable measures to protect its trade secrets include, for example, implementing systems of access registration, access credential management, access control measures, temporal limitations on distributed electronic material and access credentials, and other safeguards associated with Philips' proprietary software, including in the form of physical and/or technological safeguards and also including in the form of contractual protections and written notices and warnings.

165.   Philips has expended significant money and effort in developing Philips' proprietary software, the trade secrets embodied therein, and the access control systems that protect such software and trade secrets, and that software and the information therein would be difficult to properly acquire or duplicate by KPI or other competitors of Philips.

166.   Philips' proprietary software and access control systems derive

independent economic value to Philips by not being generally known, and not being readily ascertainable through proper means, by another person who could obtain economic value from the disclosure or use of the information.  Moreover, they are of significant commercial value to Philips, because among other things, Philips relies upon these trade secrets to achieve an advantage in the marketplace with respect to the quality, range, and efficiency of the repair and maintenance services that it is able to offer by virtue of the pricing related thereto.

167.   Upon information and belief, Philips alleges KPI has distributed Philips proprietary software images, comprising Philips trade secrets, to third parties—software images which Philips only makes available to select Philips users, and restricts as to even certain of Philips' own engineers.

168.   Upon information and belief, Philips alleges KPI possesses and is making use of Philips' trade secret tools for managing its access controls by improperly hacking into Philips' trade secret software and modifying controls and access levels to make and unauthorized use of Philips' trade secrets.

169.   Philips optionally enabled software which implements and enables licensable features and tools comprises Philips trade secrets, which Philips only authorizes execution of within specific licensed machines. These trade secrets reside on Philips Ultrasound Systems in compiled machine readable encoding, in a form which protects the nature and character and specific details of Philips trade secrets. These trade secrets are only accessible by a machine having a respective licensed option enabled by Philips' access controls. During execution a user or observer is unable to observe the nature, character, or details of the trade secrets embodied in the software that enables the machines functionality.

170.   Philips takes reasonable steps to protect its software images, each of which represents a substantial investment in time and money to develop by Philips, and to protect Philips' access control management tools.  These tools and software are protected by both technological and contractual confidentiality obligations of those

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

who are granted access to such material.   Such trade secret material provides independent economic value by not being generally known because they allow Philips to manufacture software based electromechanical medical systems and to secure those systems and the intellectual property they contain.

171.   KPI has misappropriated some or all of these trade secrets for its own commercial use, and/or benefit without express or implied consent by Philips.  At the time of its use of such trade secrets, KPI knew or had reason to know that its knowledge of the trade secrets was acquired either under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit their use, or from or through a person who owed a duty to Philips to maintain the secrecy of the trade secret or limit the use of the trade secret, or by improper means.

172.   KPI's actions have been knowing, deliberate, willful, reckless, and in utter disregard of Philips' rights. KPI's misappropriation of Philips' trade secrets by hacking into Philips' restricted systems and Philips' medical imaging systems demonstrates KPI's behavior is willful and rises to the level of maliciousness appropriate for exemplary and punitive damages.

173.   As a result of KPI's misappropriation of these trade secrets, Philips has suffered actual damages in an amount to be proven at trial. At a minimum, KPI has gained an improper competitive advantage over Philips that caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

174.   KPI's ongoing and continuing use of the trade secrets and proprietary and confidential information of Philips has caused, and will cause, Philips repeated and irreparable injury.  Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by KPI.

175.   Philips has been damaged by all of the foregoing and KPI willful and wanton conduct demonstrate that Philips is entitled to an award of exemplary damages and attorneys' fees.

176.   By engaging in the conduct set forth in the preceding paragraphs of this Complaint, KPI has unlawfully misappropriated Philips' trade secrets and violated California's Uniform Trade Secret Act, Cal. Civ. Code §3426, *et. seq.*.

## EIGHTH CAUSE OF ACTION

## Civil Theft and Violations of California's Penal Code §§ 484(a) and 496(a)

### (All Plaintiffs Against All Defendants)

177.   Philips restates and realleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Eighth Cause of Action.

178.   KPI knowingly and intentionally obtains Philips medical imaging systems, including Ultrasound Systems, under false pretenses, unlawfully hacks into those systems, and gains unauthorized and unlicensed access to Philips software features and information residing on those machines in order to use them for personal benefit and to sell them for a profit.

179.   Upon information and belief, Philips alleges that KPI further knowingly and intentionally obtained by improper means Philips' internal tools used for protecting Philips medical imaging systems, including Ultrasound Systems, and Philips software and information residing on those machines from unauthorized access.

180.   KPI has further knowingly and intentionally aided others in receiving Philips software by hacking Philips access controls and removing Philips access controls from Philips' Ultrasound Systems, and selling and trafficking those hacked systems to others.

181.   Upon information and belief, KPI conceals its activities from both Philips and the marketplace, including by making physical alterations to the ultrasound machines to erase the trace of KPI's misconduct.

182.   KPI's knowing and intentional hacking of Philips systems to create KPI's counterfeit modified Ultrasound Systems is done with the intent of obtaining Philips' proprietary software, including add on features, and information without Philips

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

authorization or knowledge and in order to use the wrongfully acquired property for KPI's benefit and to sell it for a profit.

183.  KPI's actions have been knowing, deliberate, willful, reckless, and in utter disregard of Philips' rights.

184.  As a result of KPI's behavior, Philips has suffered actual damages in an amount to be proven at trial.

185.  Upon information and belief, KPI's behavior is ongoing and continuing and has caused, and will cause, Philips repeated and irreparable injury.  Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by KPI.

186.  Philips has been damaged by all of the foregoing and is entitled to an award of compensatory damages, unjust enrichment, punitive damages, costs of suit, prejudgment interesting, treble damages pursuant to Penal Code § 496(c), and attorney's fees pursuant to Penal Code § 496(c).

187.  By engaging in the conduct set forth in the preceding paragraphs of this Complaint, KPI have violated California's Penal Code §§ 484(a) and 496(a).

## NINTH CAUSE OF ACTION
### Unfair Business Practices
### California Business and Professions Code § 17200, *et seq.*
### (All Plaintiffs Against All Defendants)

188.  Philips restates and realleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Ninth Cause of Action.

189.  The acts of Defendants described herein constitute unlawful, fraudulent and unfair business practices as defined by the California Business & Professions Code § 17200, *et seq.*

190.  Defendants are physically tampering with and modifying Philips' ultrasound machines and hacking into and modifying Philips' proprietary software on those machines, without permission, in order to sell the counterfeit ultrasound

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

machines for a profit.

191.   Philips has valid and protectable rights in the TRADEMARKS, which identify Philips as the source of its medical imaging products, including ultrasound products. The TRADEMARKS are distinctive and through Philips' continuous and exclusive long time use, have become commonly associated solely with Philips as the source identifier for the products on which they are used.

192.   Defendants' use of the TRADEMARKS in its advertising, including the Philips' logos on the device bodies of the counterfeit machines, in association with Defendant's tortious conduct towards Philips as described herein, is for the purpose of outpricing Philips and selling the counterfeit deices for considerable less than Philips would sell a comparable Ultrasound Machine.  Defendants' conduct also enables add on features that Philips might offer with the purchase of an additional license, but KPI enables these features without purchasing a license from Philips.  KPI then sells the counterfeit machines to the same customers that would buy a Philips' Ultrasound System, and KPI markets and advertises the counterfeit machines for sale in the same channels in which Philips markets and advertises its products.

193.   Defendants' unlawful and unfair acts and practices constitute unfair competition, and they mislead and deceive the general public in violation of California Business & Professions Code §§ 17200, *et seq.*

194.   Defendants' acts and practices constitute unfair competition and trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. §1114, and are therefore independent unlawful acts in violation of California Business & Professions Code §§ 17200, *et seq.*

195.   Defendants acted willfully and intentionally in hacking, tampering with, and modifying Philips devices into new and unapproved systems relying on unlicensed use of Philips' confidential and proprietary copyright protected software, and sold these counterfeit devices in connection with the TRADEMARKS and

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

through false and misleading advertising that touts an affiliation with Philips that does not exist, all while making use of Philips copyright protected advertising material. Defendants have, on information and belief, done this with an intent to cause confusion or mistake and to deceive customers into believing that there is an affiliation between Defendants and Philips or between Defendant's counterfeit products and Philips' products.

196.   The unlawful and fraudulent business practices of Defendants described above present a continuing threat to, and are meant to deceive members of, the public in that Defendants desire to promote their products by wrongfully trading on the goodwill of the TRADEMARKS and Philips' common law rights.

197.   As a direct and proximate result of these acts, Defendants have profited, and will continue to profit from, the reputation of Philips and its high quality products, the strength of the TRADEMARKS and Philips' goodwill.

198.   As a direct and proximate result of Defendants' wrongful conduct, Philips has been injured in fact and has lost money and profits, and such harm will continue unless Defendants' acts are enjoined by the Court.

199.   Defendants have no adequate remedy at law for Defendants' continuing violation of Defendants' rights.

200.   Philips demands that Defendants restore to Philips any and all profits earned as a result of their unlawful and fraudulent actions, or provide Philips with any other restitution as the Court deems appropriate.

## TENTH CAUSE OF ACTION

### False Advertising

### California Business and Professions Code § 17500, *et seq.*

### (All Plaintiffs Against All Defendants)

201.   Philips restates and realleges all of the allegations of all the paragraphs in this complaint as though fully set forth herein this Tenth Cause of Action.

202.   Defendants, by the acts and behavior and business practices described

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

herein, are violating Section 17500 of the California Business & Professions Code.

203.   Defendants creation and dissemination of statements implying or explicitly reciting an affiliation with Philips or approval by Philips of Defendants' business practices is false and/or misleading.

204.   Defendants are aware that Philips has not condoned, approved of, or authorized Defendants business practices, which include tortious conduct towards Philips, thus Defendants know and have known or exercising reasonable care should know and should have known that Defendants' advertising, described in detail above, including statements on Defendants' website, is untrue and/or misleading in violation of Section 17500.

205.   Defendants' actions are willful and in reckless disregard for Philips rights.

206.   The unlawful and false advertising practices of Defendants described above present a continuing threat to, and are intended to deceive members of the public. Defendants desire to promote their products by falsely representing an affiliation with Philips that does not exist is false and misleading.   Moreover, Defendants' make these false representations knowing that Philips has not authorized such practices and has in fact demanded that Defendants cease their behavior.

207.   As a direct and proximate result of these acts, Defendants have profited, and will continue to profit from, the Philips' name and reputation, the strength of the TRADEMARKS and Philips' goodwill.

208.   As a direct and proximate result of Defendants' wrongful conduct, Philips has been injured in fact and has lost money and profits, and such harm will continue unless Defendants' acts are enjoined by the Court.

209.   Defendants have no adequate remedy at law for Defendants' continuing violation of Defendants' rights.

210.   Philips demands that Defendants restore to Philips any and all profits earned as a result of their unlawful and fraudulent actions, or provide Philips with any

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

other restitution as the Court deems appropriate.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, the Plaintiffs request that this Court enter judgment in their favor and against Defendants as follows:

1.      Judgment be entered that

a.      Defendants have infringed Plaintiffs' TRADEMARKS and committed acts of unfair competition including false designation or origin and false advertising in violation of 15 U.S.C. §§ 1114 and 1125(a);

b.      Defendants have committed actions of circumventing a technological measure that effectively controls access to Philips' works protected under Title 17 in violation of the DCMA, 17 U.S.C. § 1201(a)(1);

c.      Defendants have committed actions of trafficking in a technology, device, product, service, component, or part thereof in violation of the DCMA, 17 U.S.C. § 1201(a)(2);

d.      Defendants have falsified and provided or distributed falsified copyright management information in violation of the DMCA, 17 U.S.C. § 1202;

e.      Defendants have committed acts of trade secret misappropriation in violation of the DTSA, 18 U.S.C. § 1836, *et. seq.*;

f.      Defendants have violated the California Uniform Trade Secret Act in violation of California Civil Code § 3426, *et. seq.*;

g.      Defendants have wrongfully taken property in violation of California Penal Code §§  484(a) and 496(a);

h.      Defendants have engaged in unlawful, unfair and deceptive business practices in violation of California Business and Profession Code § 17200, *et. seq*;

i.      Defendants have engaged in false advertising in violation of California Business and Profession Code § 17500, *et. seq.*

2.      Judgment be entered permanently enjoining Defendants and each of their

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

officers, members, employees, owners managers, agents, attorneys, successors, servants, subsidiaries, related entities, licensees, and assigns, and all persons acting in concert with any of the foregoing, from:

    a. selling, offering for sale, advertising, or promoting any goods or services using the TRADEMARKS, or any other terms that is confusingly similar to Plaintiffs' TRADEMARKS;

    b. falsely stating or promoting an affiliation with, or relationship to, Philips which does not exist;

    c. performing any actions or using any words, names, styles, titles, or marks that are likely to cause confusion, to cause mistake, or to deceive or otherwise mislead the public into believing that Defendants are endorsed by, or sponsored by, affiliated with, or associated in any way with Philips;

    d. circumventing any Philips access control;

    e. using, possessing, or distributing any Philips proprietary material or trade secrets;

    f. modifying any Philips copyright management information.

3. Order an accounting of all Philips' trade secrets or proprietary material in Defendants' possession and that all such trade secret or proprietary material be returned to Philips;

4. Defendants be held liable and ordered to account for and pay to Plaintiffs,

    a. treble actual damages or Defendants' profits pursuant to 15 U.S.C. § 1117(a) based on Defendants' willful infringement of Plaintiffs' PHILIPS Trademark;

    b. all gains, benefits, and advantages derived from Defendants' wrongful use, misappropriation, and infringement of Plaintiffs' TRADEMARKS;

    c. all losses and damages, including lost profits and costs for corrective

advertising, suffered by the Philips as a result of Defendants' wrongful use and infringement of the TRADEMARKS;

d. award monetary damages to Philips, including but not limited to compensatory damages and statutory, enhanced, and punitive damages, to the extent recoverable by law.

e. Philips' reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a), California Penal Code § 496(c) and California Civ. Code § 3426.4;

f. treble damages pursuant to Code § 496(c); and

g. exemplary and punitive damages for Defendants' willful, wanton and reckless conduct;

h. Judgment granting Plaintiffs damages and such other relief as this Court deems just and proper.

DATED: September 16, 2019

REED SMITH LLP

By: */s/ Carla M. Wirtschafter*
  Carla M. Wirtschafter
  Attorney for Plaintiffs
  Koninklijke Philips N.V. and Philips
  North America LLC

**Jury Demand**

Philips hereby requests a jury trial on all issues and claims contained herein that are eligible for trial by jury.

DATED: September 16, 2019

REED SMITH LLP

By: */s/ Carla M. Wirtschafter*
     Carla M. Wirtschafter
     Attorney for Plaintiffs
     Koninklijke Philips N.V. and Philips
     North America LLC

REED SMITH LLP
A limited liability partnership formed in the State of Delaware